OPINION *Page 2 
{¶ 1} Appellant Paul Hackmann appeals the May 29, 2007 judgment entry of the Guernsey County Court of Common Pleas, Juvenile Division, terminating Appellant's parental rights, and granting permanent custody of Appellant's four minor daughters to Appellee Guernsey County Children Service Board ("GCCSB").
 {¶ 2} Eva Hackmann and Paul Hackmann are the married parents of Amber Hackmann (DOB 5-5-94), Paula Hackmann (DOB 1-2-00), Jessica Hackmann (DOB 9-5-02), and Kayla Hackmann (DOB 8-12-03).[1] GCCSB became involved with this case on November 30, 2005, based upon an allegation of medical neglect on behalf of one of the children not receiving timely medical treatment. Upon investigation, GCCSB became aware of allegations of domestic violence and drug abuse by the parents. Appellant had been arrested and placed in jail on the charge of domestic violence. One of the children stated that she witnessed her mother snort cocaine. GCCSB was granted temporary custody of the children on December 2, 2005.
 {¶ 3} The trial court held an adjudicatory hearing on March 1, 2006. Appellant appeared at the hearing and admitted to the allegations of neglect and dependency of the four children. Mother did not appear at the hearing, but her attorney was present. The court found the children to be neglected and dependent. The trial court also approved a case plan for the parents created on December 29, 2005.
 {¶ 4} On May 3, 2006, a dispositional hearing was held in the matter. The trial court continued the temporary custody of the children with GCCSB. Appellant appeared at the hearing, but mother failed to appear. *Page 3 
 {¶ 5} GCCSB filed a motion for permanent custody on November 20, 2006. The permanent custody hearing was set for February 27, 2007. Mother appeared and requested a continuance to be allowed the assistance of counsel. The hearing then took place on May 8, 2007.
 {¶ 6} On May 29, 2007, the trial court filed its Judgment Entry and written Findings of Fact and Conclusions of Law terminating Appellant's and mother's parental rights and granting permanent custody of the four children to GCCSB.
 {¶ 7} Based upon the trial court's decision, Appellant raises one Assignment of Error:
 {¶ 8} "I. THE TRIAL COURT'S DECISION TO TERMINATE THE APPELLANT'S PARENTAL RIGHTS AND GRANT PERMANENT CUSTODY TO TUSCARAWAS COUNTY JOB AND FAMILY SERVICES (SIC) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE PURSUANT TO R.C. 2151.414."
 I. {¶ 9} In his Assignment of Error, Appellant argues the trial court erred in granting permanent custody of his children to GCCSB. We disagree.
 {¶ 10} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential *Page 4 
elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978),54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 11} Revised Code 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C.2151.414(A)(1) mandates the trial court schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 12} Following the hearing, R.C. 2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:
 {¶ 13} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 14} "(b) The child is abandoned.
 {¶ 15} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 16} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." *Page 5 
 {¶ 17} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 18} In the case sub judice, the trial court found that in regard to Appellant: (1) the children have been in the temporary custody of the GCCSB for 12 or more months in the past 22 months under R.C.2151.414(B)(1)(d); and (2) the children could not be placed with either parent within a reasonable time.
 {¶ 19} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E) exist, which includes:
 {¶ 20} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents *Page 6 
for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 21} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code;"
 {¶ 22} A case plan was created for Appellant on December 29, 2005 and the trial court adopted the case plan on March 1, 2006. Appellant was required to: (1) complete inpatient drug and alcohol assessment by January 2, 2006 and comply with treatment until treatment is deemed no longer necessary by the service provider; (2) Sign releases of information; (3) Comply with random drug screens; (4) Schedule a mental health assessment and comply with recommendations; (5) Obtain and maintain housing for at least three months; (6) Obtain and maintain employment for at least three months; (7) Provide for the basic needs of the children for at least three months; (8) Work with diversion in the home, if needed; and (9) Attend visitations with the children. (Tr. 24).
 {¶ 23} The testimony elicited at trial demonstrated Appellant had not met his case plan objectives. The GCCSB caseworker testified that Appellant had been discharged from two drug and alcohol agencies for noncompliance with his treatment plan and not attending sessions. (Tr. 103). He was currently attending his third drug and alcohol treatment program. Id. Appellant's previous caseworker and current caseworker testified that Appellant never refused a drug screen, but tested positive for *Page 7 
cocaine, marijuana, and methadone numerous times during the pendency of this matter. (Tr. 24-28, 103, 106). Appellant also tested positive for benzodiazepines and opiates, but these results may have been attributable to the prescription medications Appellant was taking.
 {¶ 24} Appellant's current caseworker testified that she questioned Appellant's ability to maintain housing and pay his bills, including a car payment. (Tr. 103). She stated that Appellant's car was recently repossessed and that he had been evicted from his apartment for non-payment of rent. (Tr. 104-105). He was currently residing with his girlfriend in a one or two bedroom apartment. Id.
 {¶ 25} Appellant's mental health counselor at Noble Behavioral Health testified that Appellant was diagnosed with adjustment disorder with anxious mood, unspecified mental disorder, cannabis dependence, and cocaine dependence. (Tr. 45). It was recommended that Appellant receive individual counseling and weekly group counseling. Id. The counselor testified that Appellant's file was closed because Appellant did not return to individual counseling and did not continuously attend group counseling. Id. Appellant then began counseling at Six County. Appellant's counselor at that facility testified that Appellant attended counseling sessions with her beginning in December 2006. (Tr. 55). Appellant failed to attend his sessions scheduled in January 2007. (Tr. 56). When Appellant recommenced his sessions in February 2007, his counselor testified that Appellant fell asleep mid-session during his appointments and this did not stop until March 2007. (Tr. 57-58). She stated that those sessions were "probably not effective." Id. *Page 8 
 {¶ 26} Appellant did regularly attend his supervised visits with his children. The parent aides testified that there were more unproductive visits than productive visits. (Tr. 79). One of the issues with Appellant's visits was his continual use of his cell phone while visiting with his children. (Tr. 65-66, 78). Appellant was asked to not bring his cell phone to the visits, but continued to do so. (Tr. 78). The parent aides also witnessed little interaction between Appellant and his three younger daughters. (Tr. 66). Appellant spent most of his time during the visits speaking with his eldest daughter or speaking on his cell phone. Id.
 {¶ 27} The next determination is whether the trial court erred in concluding that a grant of permanent custody to GCCSB was in the children's best interests. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 28} Upon review of the record, we find the trial court did not err in finding by clear and convincing evidence that children should be placed in the permanent custody of GCCSB. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child *Page 9 
should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Mauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quoting In re Awkal (1994),95 Ohio App.3d 309, 316, 642 N.E.2d 424.
 {¶ 29} The four children have been in the temporary custody of GCCSB for seventeen months. Appellant has visited with his children during that time, but as stated above, the record shows that Appellant had little interaction with his younger daughters during his supervised visits. He spent most of his time speaking on his cell phone during his time with his children.
 {¶ 30} The Guardian Ad Litem was present at the custody hearing. The GAL timely submitted a written report to the trial court recommending that motion for permanent custody be granted to GCCSB.
 {¶ 31} Upon review, we find sufficient, competent and credible evidence in the record to support the trial court's finding by clear and convincing evidence, and find the trial court did not err in determining the best interests of the child was best served by terminating the parental rights and granting permanent custody to GCCSB.
 {¶ 32} The sole Assignment of Error is overruled. *Page 10 
 {¶ 33} The judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is hereby affirmed.
By: Delaney, J., Wise, P.J., and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Guernsey County Court of Common Pleas, Juvenile Division is affirmed. Costs assessed to appellant.
[1] Eva Hackmann has also filed an appeal of the trial court's May 24, 2007 decision under Case No. 07-CA-25. *Page 1